In The United States District Court For District of Delaware

Kenny F. Reeder,
   Petitioner,

   V.

Warden Thomas Carroll

Civ. A. No.: = 0 7 - 2 4 3 -

This is Petitioner's Memorandum of Law in Support of his Habeas Corpus



FILED

MAY - 3 2007

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

Respectfully submitted,
   Kenny Reeder # 253949
   1181 Paddock Rd. D.C.C.
   Smyrna, DE. 19977

# Table of Citations

PAGE

Brady v. Maryland, 373 U.S. 83 (1963) ..... Passim

Brown v. Borg, 951 F.2d 1011 (1991) . . . . . . . . . . . . . 10

California v. Trombetta, 467 U.S. 479 (1984) . . . . . . . . . . 5, 21

Coolidge v. New Hampshire, 403 U.S. 443 (1971) . . . . . . . . . 6

Delaware v. Prouse, 440 U.S. 648 (1979) . . . . . . . . . . . 25-26

Downs v. State, Del. Supr. 570 A.2d 1142 (1990) . . . . . . . . 19

Earp v. Ornoski, 431 F.3d 1158 (2005) . . . . . . . . . . . 29

Franks v. Delaware, 438 U.S. 154 (1978) . . . . . . Passim

Hooks v. State, Del. Supr. 416 A.2d 189 (1980) . . . . . . . . 17

Horton v. California, 496 U.S. 128 (1990) . . . . . . Passim

Illinois v. Gates, 462 U.S. 213 (1984) . . . . . . . . . . . 22

Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992) . . . . . . . . . 30

Keys v. State, Del. Supr., 337 A.2d 18 (1975) . . . . . . . . 4, 24

Kimmelman v. Morrison, 477 U.S. 365 (1986) . . . . Passim

Kyles v. Whitley, 514 U.S. 419 (1995) . . . . . . . . . . 16, 21

Minnesota v. Dickerson, 508 U.S. 365 (1993) . . . . . Passim

Mooney v. Holohan, 294 U.S. 103 (1935) . . . . . . . . . 6, 13

Napue v. Illinois, 360 U.S. 264 (1959) . . . . . . . . . 6, 13, 21

Pyle v. Kansas, 317 U.S. 213 (1942) . . . . . . . . . . 11, 21

Keller v. Sec'y for the Dept. of Corr., 377 F.3d 1317 (11th Cir 2004) . . 30

Sawyer v. Whitley, 505 U.S. 333 (1992) . . . . . . . . . . 1

Schlup v. Delo, 513 U.S. 298 (1995) . . . . . . Passim

State v. Stecher, Del. Supr., 1970 WL 115843 . . . . . . . . 17

Steagald v. U.S., 451 U.S. 204 (1981) . . . . . . . . . . 22

Stone v. Powell, 428 U.S. 465 (1976) . . . . . . . . . 22, 29

Strickland v. Washington, 466 U.S. 668 (1984) . . . . Passim

Tejeda v. Dubois, 142 F.3d 18 (1998) . . . . . . . . . . 28

Tatman v. State, Del. Supr., 494 A.2d 1249 (1985) . . . . . . 17

Thompson V. State, Del. Supr., 539 A.2d 1052 (1988). . . . . 17

Taylor V. Maddox, 366 F.3d 992, 1001 (9th Cir. 2004) . . . . 30-31

Townsend V. Sain, 372 U.S. 293 (1963) . . . . . . 30

U.S. V. Agurs, 472 U.S. 97 (1976) . . . . . . 11, 21

U.S. V. Bagley, 473 U.S. 667 (1985) . . . . . . 16, 21

U.S. V. Cronic, 466 U.S. 648 (1984) . . . . . . 23

U.S. V. Magellanes, 10 Fed. Appx. 778 (10 Cir. 2001) . . . . 27

U.S. V. Wallach, 935 F. 2d 445 (1991) . . . . . . 10, 21

Williams V. Taylor, 529 U.S. 362 (2000) . . . . . 18

## State Statues & Rules of Evidence

| State Statues & Rules of Evidence | Page |
|---|---|
| Title 11 c. § 3507 | 22, 24 |
| Title 11 c. § 1223 | 11, 28 |
| Title 11 c. § 1235 (e) | 11, 28 |
| D.R.E. 801 | 22 |
| D.R.E. 802 | 22 |

| Federal Statues & Rules of Evidence | PAGE |
|---|---|
| Title 28 U.S.C. § 1746 | 28 |
| Title 18 U.S.C. § 1621 | 28 |
| F.R.E. 801 | 22 |

# Jurisdiction Of the Court

The Petitioner invokes the Jurisdiction of the Court Pursuant to <u>28 U.S.C.A. § 2254</u> Claiming he is being held illegally by the Respondents in violation of his fourth, fifth, Sixth and fourteeth Amendment Rights of the U.S. Constitution. <u>Brecht V. Abrahamson</u>, 507 U.S. 619, 629-30 (1993). <u>Strickland V. Washington</u>, 466 U.S. 668, 687 (1984).

# Nature and Stage of the Proceedings

1. Petitioner is incarcerated at the Delaware Correctional Center (D.C.C.),

2. On January 20, 1999, Petitioner was arrested and Charged with Burglary & related Charges in a fifty (50) Count indictment,

3. On Febuary 4, 1999, Petitioner's Preliminary (Probable Cause) hearing was held & States Primary witness (Det. Conaway) testified,

4. On August 18, 1999, Petitioner's Suppression hearing was held & State called two (2) witnesses, det. T. Conaway being one of them,

5. On September 13, 1999, Petitioner's trial by Jury was held until September 24, 1999, Petitioner was found guilty of all Count's,

6. On November 5, 1999, Petitioner was declared a habitual offender during his sentencing hearing & sentenced to thirty two (32) Years at level 5 incarceration,

7. On May 1, 2000, after remand from Delaware Supreme Court on State's Appeal, Petitioner was resentenced to one hundred & twelve (112) years at level 5 incarceration,

8. On March 26, 2001, Petitioner's direct Appeal was denied / Affirmed by Delaware Supreme Court,

9. On May 21, 2001, Petitioner's motion for reargument was denied by Del. Supreme Court,

10. Sometime in month of October or November 2001, Petitioner filed a writ of mandamus to Del. Supreme Court, (No. 539, 2001)

11. On December 10, 2001, Petitioner's writ of mandamus was

dismissed by Del. Supr. Court,

12. Petitioner then filed a motion for Post-conviction relief Pursuant to Super. Ct. R. 61 on Febuary 24, 2005,

13. On May 26, 2005, Petitioner's Post-conviction Relief motion was denied & he appealed,

14. On May 3, 2006, Petitioner's appeal was affirmed by the Del. Supreme Court,

15. On July 13, 2006 Petitioner filed another writ of mandamus to the Del. Supr. Court, (No. 372, 2006),

16. On October 4, 2006, Petitioner's Writ of mandamus was dismissed.

This is Petitioner's memorandum of law in support for his Petition under 28 U.S.C.A. § 2254 for a writ of Habeas Corpus.

# Statement of Facts

1. In the winter of late 1998 & early 1999, the Delaware State Police were investigating a series of burglaries in the Sussex County area.

2. Detective Timothy Conaway was the Chief Investigating Officer & States Primary witness in these burglaries (see: Trial tr. at E-58)

3. Det. Conaway began focusing on a black Mustang with temporary tags because of information that he said was provided by a witness, Jeff Donaway (see: Prelim. hrg. tr. at 7&8),

4. Mr. Donaway however, was called to trial by state & testified that he did not know if the car was black, dark blue or dark green & he also said he never seen any people over at his neighbors house the night of the burglary or see anyone exit or enter the car (see: trial tr. at C-39, 42-43, 45, 49-50),

5. On January 11, 1999, Petitioner was pulled over on Route 20 for a minor traffic violation (not using his turn signal while passing cars), he didn't have his license on his person, so the trooper (Shawn Wright) wrote out C.P.C's. (crime prevention checks) to get Petitioner's information (ie: Name, address, D.O.B, Age, where going, where coming from, where work, year, make & model of car, info. on passenger's, etc) (see: Prelim. tr. at 13). The area where the car was seen on Route 9 is in total opposite direction/county where Petitioner was pulled over.

6. This information (C.P.C.) was turned over to det. Conaway whom then pulled Petitioner's record & seen he has been convicted of past burglaries (see: Suppr. hrg. tr. at 31).

7. Det. Conaway then compiled all the burglaries together in one file, looking at how they came about, the methods of operation (ie:

means of entry), reviewed the troopers initial reports (See: Prelim.hrg. tr. at 5 ½ 6) & (Supr. hrg. tr. at 14).

8. On January 13, 1999, det. Conaway & two (2) other officer's (one being his sergeant) went to Petitioners Jobsite at Sea Colony in Bethany Beach on a "fact-finding mission"; no probable cause, he admitted he didn't have much at that point (see: Supr. hrg. tr. at 50 & 51). Det. Conaway got out of his car & checked the Mustang's tag to see if the tag matched that of the C.P.C. Det. Conaway's intent was to talk to Petitioner, He then looked in the windows of the car & seen Petitioner's work tools that he labeled "Burglars tools" (See also: Trial tr. at D-158)(for fact-finding mission/ No Probable Cause) 9. Det. Conaway was at a construction site & he knew that Petitioner was a construction worker. He also knew that none of the burglaries had any Prymarks or screw marks at any scene or any marks that could be associated with Petitioner's tools (see: Prelim. hrg. tr. at 62) & (Supr. hrg. tr. at 48 & 49).

10. He also noticed glove's (Petitioner worked outside), flash light(s), he also seen two (2) cases on the backseat Partially covered by jacket's (a black one & a brown one) but he "wasn't sure" if they were stolen Property, so he called the victim (via) his cell Phone to get a description of her missing Property (wasn't immediately apparent) (see: Supr. hrg. tr. at 59)& (Trial tr. at E-81 & 82).

11. Det. Conaway testified that the victim described what he was looking at to a "T". He then described back to her what he was looking at & the victim then confirmed that that had to be her Property (see: Supr. hrg. tr. at 34).

12. The victim was called to trial by state & testified that both boxes were black (see: trial tr. at C-104). The victim also testified

that det. Conaway called her & told her that her property was in the backseat of a car & he'd talk to her later (See: Trial tr. at C-106-7).

13. The victim said she remembered the conversation pretty specifically because they did not talk at length (See: Trial tr. at C-111-112). The victim said she didn't give det. Conaway any description's in the phone call at Bethany Beach (Petitioner's work place) (See: Trial tr. at C-113, 118-119).

14. Det. Conaway then got off his cell phone & a unidentified construction worker came running over to his car & asked if he was looking for Kenny Reeder (the petitioner). He said "Yes" & the declarant said that "petitioner walked around the corner of this building, saw the police & took off, dropping everything" (See: Supp. hrg. tr. at 35).

15. Det. Conaway then "slim-jimmed" the car open at the scene & After searching & seizing the car, det. Conaway said he "later" found out (after the fact) that petitioner borrowed a car to go to the store to make a phone call (See: Supp. hrg. tr. at 40) & (Prelim. hrg. tr. at 17).

16. The "out of court" declarant was never an in court witness (the unidentified construction worker). The "supposedly" statements' det. Conaway was given were revealed through his own testimony.

17. Det. Conaway said he took the property to the victim's house where she identified the property in person (See: Prelim. hrg. tr. at 19).

18. The witness at trial was called by state & said det. Conaway called her to come up to the police station to identify the property (See: Trial tr. at C-106-107). The victim testified that det. Conaway never brought her property over to her house at all to identify (See: Trial tr. at C-115, 118-119).

19. The petitioner's suppression hearing was ultimately denied from the (what the court called) "blow-by-blow" description in the cell phone call & from the "out-of-court" declarant that was never identified or an in court witness (See: Supp. hrg. Judges' Rational, Exhibit A.)

20. Det. Conaway testified that "the new information (warrantless) Search & Seizure of the car was a <u>Great Part of his Probable cause</u> for the house (Search) warrant (See: Suppr. hrg. tr. at 66)(Trialtr. at E-52,55).

21. Det. Conaway then obtained a Search Warrant for Petitioners residence where more stolen items were found (see: Prelim. hrg. tr. at 30 & 31), (see also: Search Warrant, Exhibit B).

22. Det. Conaway obtained a Pair of boots out of Petitioner's residence that he said matched foot Prints in a field beside a burglary scene. Det. Conaway testified in the Preliminary hearing that "<u>he actually took the boot out to the scene, because it was in a field undisturbed, & matched, sat it right beside it, identical tread.</u>" He also said <u>he sent the boots & Prints to S.B.I (State Bureau of Identification), Rod Heaman & at time of the Prelim (Probable Cause) hearing was waiting on the results</u> (see: Prelim. hrg. tr. at 54). Det. Conaway led the Court to believe he had inculpatory evidence against Petitioner.

23. Det. Conaway testified in trial on direct that he <u>did not take</u> Petitioner's shoes/boots to the scene <u>like he testified in Preliminary (Probable Cause) hearing</u>(see: Trial tr. at C-158-161).

24. Det. Conaway testified in Preliminary that Petitioner had Six(6) or Seven (7) Phone's in his bedroom (see: Prelim. hrg. tr. at 37).

25. He testified in trial that that was inaccurate (see: Trial tr. at E-123).

26. The evidence in the Preliminary hearing was det. Conaway testifying to, the witness saying the mustang was black (see: #3&4), No "blow-by-blow" description, the out-of-court declarant that was never Produced (see: # 14,16), det. Conaway having the Property identified at Victim's home (see: # 17-18), det. Conaway testifying to taking boots to scene & making Prints (see: # 22-23) & No Prymarks or screw marks at any scene to associate Petitioners' work tools with any Burglary (see: # 8-9).

27. The evidence in the suppression hearings can be summed up to what the Hon. Judge denied it from: the "blow-by blow" phone call descriptions (see: #10-13) & the unidentified "out-of-court" declarant that was never an in court witness (see: # 14-16).

28. The Hon. Judge (Graves) that presided over my suppression hearing did not preside over my trial.

29. The state in it's opening arguments pointed out to Jury that she had evidence to establish that Petitioners tools are like ones commonly used to "break-in" residences (see: Trial tr. at A-76).

30. The state knew Petitioners tools could not be associated with any of the burglaries since all means of entry were broken windows or unlocked doors (see: #9).

31. At trial, the states case consisted of calling all the victims to court to testify as to what was taken in the burglaries & what they recovered (see: Trial transcripts).

32. The state also called some police detectives, one being det. John B. Mitchell. Det. Mitchell testified about the boot prints at the Conaway burglary where the silverware was taking. He testified that Petitioners boots were similar in size, shape, & configuration (see: Trial tr. at C-199 to 200).

33. The State published Petitioners' boots & pictures of the prints to the Jury during trial (field beside Conaway burglary) (see: Trial tr. at C-201-202).

34. Det. Conaway testified in trial that he did an investigation on Petitioner & his Co-defendant & the results of his investigation weren't warranted that he continue the subjects further (see: Trial tr. at D-156-157). This was right before det. Conaway went to Petitioners' Jobsite.

35. Det. Conaway also testified to the jury about the "blow-by-blow" descriptions that he knew never happened. He testified again in trial that he was able to identify the Property as stolen

only from the Phone Call (see: Trial tr. at D-160-161).

36. Det. Conaway testified to the jury in trial about the "out -of-court" declarant that was never identified. He said " At that Point, an unknown construction worker came out & said 'Are you looking for Kenneth Reeder?' We said, 'Well, Yeah, we are going to be .' He said, 'He just walked around the corner & saw you guys & took off running." (verbatim) (See: Trial tr. at E-12).

37. There is <u>no evidence any where in the record</u> that Petitioner "took off running, dropping everything after seeing Police around his vehicle"(see: All transcripts).

38. The state never Put forth evidence that Put Petitioner inside any of the homes that were burglarized, an element of Burglary. The only close Proximity was the field beside the Conaway residence Where a size 10 M boot Print was found that was similar in size, shape & Configuration (see: # 32).

39. Det. Conaway testified that he "<u>didn't know</u>" if the boots in evidence (that were Published to jury) were boots at Conaway burglary (see: Trial tr. at E-127-129).

40. The Petitioners' trial was <u>eleven (11) days</u> long due to a Hurricane that headed to sussex County, the governor declared a "State of Emergency".

41. The Jury retired to jury room to deliberate on September 23, 1999, they left shortly thereafter for the day. On September 24, 1999, the Jury had a Question." What incident do the Pictures (of the bootPrints) go with?" "From which victim's residence do the Pictures Pertain?" Once the court told them "no more evidence can come in", not even two (2) minutes after they went back in to resume deliberations, they had a verdict & found Petition guilty of the entire fifty (50) count indictment (see: Trial tr. at H-3 to H-6).

PAGE

A. Preliminary Hearing .    .    .    .    .    1 thru 6

B.  Suppression Hearing .    .    .    .    .    6 thru 10

C. Prosecutorial Misconduct .    .    .    .    10 thru 13

D.  A Different Result .    .    .    .    13 thru 14

E.  TRIAL .    .    .    .    .    .    14 thru 16

F. All Cases Cited by Trial & Delaware Supreme Court    16 thru 18
   (reliance of out-of-court declarant)

G. The Standard/Requirements of "Contrary to" or "unreasonable
   Application" of Clearly established federal Law  .    .    .    18 thru 23

H. Ineffective Assistance of Counsel .    .    .    23 thru 29

I. Entitlement to Evidentiary Hearing    29 thru 31

Petitioner seeks to remedy a breach of his due Process rights which has rendered him incarcerated for 112 years based upon his state court Convictions of Crimes obtained in violation of his Constitutional rights. The Delaware Courts have refused to Give him relief from his convictions which are indisputably based on 4th, 6th, & 14th Amendment violations which had the effect of him being denied his right to a trial altogether. As the Court has taught, the central Purpose of any system of Criminal Justice is to convict the Guilty & free the innocent. Justice surely went awry in state court, Petitioner presented a strong showing of factual & legal innocence buttressed by several sound Constitutional Claim's, as such it met the rigorous modern standards for relief.

## Actual Innocence Claim

In order for Petitioner to succeed on a actual innocence Claim Pursuant to Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851 (1995), he needs to establish a requisite Probability that "Constitutional violation has Probably resulted in the Conviction of one who is actually innocent", Petition must show that it is more likely than not that no reasonable Jury would have convicted him in light of the new evidence. At the same time, the showing of "more likely than not" imposes a lower burden of Proof than the "clear & Convincing" standard required under Sawyer v. Whitley, 505 U.S. 333 (1992). Petitioner avers that the state relied heavily on her Primary witness, Chief investigating officer, det. Conaway (to tie all the Pieces together) in two (2) Pretrial hearing's Concerning the steps he used to justify his Probable Cause of the Warrantless Search & seizure of Petitioner's car.

## Preliminary Hearing

A.            1. Det. Conaway testified in this Probable cause hearing that

a witness told him he seen a "black" mustang at his neighbors house the night of the burglary with people getting in & out of the car (see: Prelim. hrg. tr. at 7).

2. Petitioner was pulled over on S.R. (State Route) 20 driving a black mustang. Det. Conaway said he ran his record when this information was passed onto him & seen Petitioner has been involved in burglaries before (see: Prelim. hrg. tr. at 13 & 14).

3. Det. Conaway testified that he reviewed the troolers initial reports & gathered all the reports & put them in one file (see: Prelim. hrg. tr. at 5 & 6).

4. Det. Conaway testified he drove down to Petitioners Jobsite to talk to him (see: Prelim. hrg. tr. at 16). He testified later in trial that prior to going to Petitioners Jobsite he wasn't confident Petitioner was involved (see: Trial tr. at E-116).

5. He said when he located Petitioners car he looked in the windows & noticed flash lights, gloves, pry bar, screw driver, hammer, silverware cases & a cassette tape. He also said that none of Petitioners tools could be associated with any of the burglaries because all methods of operation was broken windows or unlocked doors & none of the burglaries had any pry marks or screw marks at any scene (see: Prelim. hrg. tr. at 62).

6. Det. Conaway said a unknown construction worker told him that Petitioner saw him looking in his car & absconded (see: Prelim. hrg. tr. at 17 & 18). He then "slim-jimmed" the car open & search & seized it. He testified that after he searched & seized the car, he "later" found out Petitioner went to store to make a phone call (see: Prelim. hrg. tr. at 17).

7. Det. Conaway testified he confirmed the identity of the property by "taken one step further & physically took the property to the victim & she identified it in person" (see: Prelim. hrg. tr. at 19 & 20).

8. Det. Conaway testified that he put all the information from the car into a search warrant for Petitioner's residence (see: Ex. B). Det. Conaway used the tools out of the car as Probable cause to procure search warrant for house (see: Search Warrant addendum for Probable cause #8), knowing there was no evidence

linking the tools to any scene.

9. He also testified that he searched & seized the car so Petitioner couldn't double back & flee (see: Prelim. hrg. tr. at 20 & 21). Det. Conaway testified in Prelim. that:

(verbatim)      Q. And you didn't testify regarding recovering any finger-
                prints or other physical evidence linking Mr. Reeder to any
                of these crime scenes & I'm not talking about the property
                recovered at his house, I'm talking about the crime scene
                itself?

(det. Conaway)   A. "Other than the Timberland boots & the matching size, &
                the matching prints, which we currently have being sent to
*(exculpatory-  State Bureau of Identification (S.B.I.), we haven't got results
Evidence)*      back on that. But we have photographs & feet prints".
                "And we actually took the boot out to the scene, because it was
                in a field undisturbed & matched, sat it right there beside it,
                along with the photograph, which was the same size, size
                ten, made a tread right there beside it, identical tread.
                And we took that boot, along with the photograph of that print
                & sent it to Rod Hegman, State Bureau of Identification."
                Q. And that's being processed now?
                A. "That's correct". (see: Prelim. hrg. tr. at 53 & 54).

        10. Det. Conaway led the court to believe he had inculpatory evidence
against the Petitioner & at time of Prelim was awaiting on the results from S. B. I.
        11. The defense never recieved these results. Petitioners conviction
was obtained in violation of Brady v. Maryland, 373 U.S. 83, 87, 83 S.ct. 1194, 1196-7,
which held that the suppression by the prosecution of evidence favorable to an
accused violates due process where the evidence is material either to guilt or to
punishment. The suppression of this (exculpatory) evidence had a "substantial &

— 3 —

injurious effect or influence in determining the jury's verdict'"

12. Assuming arguendo, that a harmless-error enquiry were to apply, a Bagley error of this nature could not be treated as harmless, since "a reasonable Probability that, had the (exculpatory) evidence been disclosed to the defense, the result of the Proceeding would have been different", 473 U.S., at 682, 105 S.Ct., at 3383.

## TRIAL

13. The state called Jeff Donaway to trial & he testified adamantly on direct & Cross examination that he "did not know", if the car's color was "black, dark blue or dark Green". He also testified that he never seen anyone over or around his neighbors house that night & never seen anyone exit or enter the car (see: Trial tr. at C-38-9, 42-3, 45, 49-50). See det. Conaway's testimony at Prelim. hrs. P6.7 & 8. The witness did not tell det. Conaway the mustang was black. This is false testimony by the detective concerning Probable cause.

14. The out-of-court declarant (unknown Construction worker) was never Produced as an in-court witness in violation of Petitioners Confrontation rights to state & federal Constitution, Delaware statue (3507), Delaware & Federal Rules of Evidence (613 & 801).

15. The legislative language established in Keys v. State, Del. Supr., 337 A.2d 18 (1975), the Court held that in order to offer an out of court statement(s) as affirmative evidence, the statue (Title 11 c. §3507) requires the declarant to be in court witness & examined on direct as to the truthfulness or non-truthfulness of the out-of-court statement itself by the Party offering the statement & be subject to cross-examination before the statement can be used as affirmative evidence.

16. The statued was not followed in the case at bar. The statement's were revealed thru-det. Conaway's testimony & used as affirmative evidence against Petitioner without ever Producing the declarant in violation of his 5th, 6th federal Constitutional rights to U.S. Constitution, U.S.C.A. Const. Amends. 5, 6.

17. The burden was improperly shifted to Petitioner to call the declarant. The state should not be allowed to rest its case without ever calling the declarant it relied upon to prove it. The average citizen accused of speeding would feel great resentment if the state were permitted to prove its case thru- a single police witness who did not see the incident & who relied solely on what a unknown declarant told him.

18. There is no evidence anywhere in the record that Petitioner absconded after seeing police around his car (see: All transcripts). The state was required to produce the declarant since det. Conaway used the statements to "slim-dim" the car open (used as an exigent circumstance).

19. The state called Angie Conaway to trial & she testified as follows: (verbatim)-direct Q. Did he talk to you later?

> A. Yes, ma'am. He called me from the police station & asked me to come up & identify it. (see: Trial tr. at C-106-7).

20. The state's witness testified that det. Conaway never brought her property over to her house to identify (see: Trial tr. at C-106-7, 115 (cross) & (redirect) 118-19). Det. Conaway never took the cases to the witness house to be identified after the search & seizure. (Prelim. hrs. tr. at 19). This testimony was material & necessary to the finding of probable cause in Prelim & it was false. This is how det. Conaway said it was identified.

21. Det. Conaway testified in trial "thru- his own testimony" that he never took Petitioner's boots to the field beside the Conaway burglary & make prints that matched the boots (see: Trial tr. at C-158-161). The state was aware det. Conaway committed perjury concerning Probable Cause.* He never took the boots to the scene.* (More Perjury)

22. The court in California V. Trombetta, 467 U.S. 479, 104 S. Ct. 2528 held that the most rudimentary of the access-to-evidence cases impose upon the Prosecution a constitutional obligation to report to the defendant & to the trial

Court whenever Government witnesses lie under oath. Nalue V. Illinois, 360 U.S. 264, 269-72, 79 S.Ct. 1173 (1959); See also Mooney V. Holohan, 294 U.S. 103, 55 S.ct. 340 (1935). But Criminal defendants are entitled to much more than protection against perjury. A defendant has a constitutionally protected privilege to request & obtain from the prosecution evidence that is either material to guilt of the defendant or relevant to the punishment to be imposed. Brady V. Maryland, 373 U.S., at 87, 83 S.ct., at 1196. Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt.

23. The state never stopped trial & inform the trial court & petitioner about det. Conaway's material testimony that was manifestly untrue insted she proceeded on with trial & ignored it.

24. Petitioner has established the requisite probability that it is more likely than not no reasonable jury would have convicted him in light of this new evidence. Petitioner was denied a full & fair opportunity to present his case at state level.

## Suppression Hearing

B.          1. Petitioner filed a motion to suppress the evidence that derived from the warrantless search & seizure & the subsequent house warrant. Petitioner cited Coolidge V. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022 (1971) to support the motion (see: Ex.C).

2. The suppression was finally held on August 18, 1999 after being postponed by state twice. Petitioner's attorney said the reason was the state was trying to gather more evidence to justify the search (see: Affidavit, Ex.D).

3. The state called two (2) witnesses, one being det. Conaway to testify concerning the steps he used to solidify the probable cause of the search. He said he went to the files, pulled the reports of the burglaries with same methods of

Operation (broken windows) & placed them all out on the table (see: Suppr. hrg. tr. at 14).

4. Det. Conaway falsely testified again concerning a witness <u>supposely</u> telling him about people getting in & out of the car at the burglary on s.r.#9 (see: Suppr. hrs. tr. at 27-31). He testified that he came down to petitioner's jobsite on a "fact-finding" mission & to eventually talk to petitioner (see: Suppr. hrs. tr. at 32). <u>No Probable Cause</u>.

5. He said he located the car & got out of his car to make sure by matching the tag with that of the C.P.C. He said he looked into the windows & seen gloves, several flashlights, prytools & 2 cases that were partially covered (a black case & a brown case).

6. He testified that "<u>he wasn't sure</u>" what he was looking at, so he called the victim (via) his cellphone to get a description, he testified she described what he was looking at to a "T". And he then described back to her what he was looking at & she confirmed over the phone that the items had to be her property (see: Suppr. hrs. tr. at 59 & 34).

7. The U.S. Supreme Court established under the "Plain-View" doctrine in <u>Minnesota V. Dickerson</u>, 508 U.S. 365, 113 S. Ct. 2130 (1993), if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent & if the officers have a lawfull right of access to the object, they may seize it without a warrant. See <u>Horton V. California</u>, 496 U.S. 128, 136-7, 110 S.Ct. 2301, 3307-8 (1990). If, however, the police lack probable cause to believe that an object in plain view is contraband <u>without conducting some further search of the</u> object -- i.e., if "its incriminating character [is not] 'immediately apparent'," <u>Horton</u>, supra, 495 U.S., at 136, 110 S.Ct., at 2308 - the plain-view doctrine cannot justify its seizure.

8. Det. Conaway's observation of the property <u>was not immediately apparent</u> within the meaning of the plain-view doctrine. Det. Conaway <u>conducted some further search of the object(s)</u> in violation of plain view doctrine, therefore rendering the warrantless search & seizure unreasonable under the fourth (4th) Amendment to the

Federal Constitution, U.S.C.A. Const. Amends. 4, 14.

9. The warrantless search & seizure should have been suppressed & the subsequent house warrant voided as fruits of poisonous tree. Petitioner is entitled to habeas relief. Petitioner has shown that it is more likely than not that no reasonable jury would have convicted him in light of new evidence & that constitutional violation has probably resulted in the conviction of one who is actually innocent (<u>Schlup</u> standard).

10. Det. Conaway said once he ended the phone call, a unknown co-worker came running over to his car asking if he was looking for "Kenny Reeder", he testified the declarant said "Petitioner walked around the corner of the building, saw you guys, dropped everything" (see: Suppr. hrg. at 35).

11. He testified that he searched & seized the car & confirmed the property was the property & he found out "later" Petitioner went to store to make a phone call. Det. Conaway said prior to the search there was <u>never</u> any addition on <u>any report</u> about the silverware cases being "<u>leather</u>" <u>until after the search & seizure</u> (see: Suppr. hrg. at 47).

12. Det. Conaway was <u>asked</u> a question by the trial court, "if he reviewed the police reports after the seizure to find out there were no prymarks at any burglaries" & he said "<u>Correct</u>" (see: Suppr. hrg. at 58-9).

13. Det. Conaway falsely said "Correct", when he previously testified to reviewing the troopers initial reports, gathering them altogether & placing them all out on table & testified in prelim that none of Petitioner's tools could be associated with any crime scene (s) (see: prelim. hrg. at 62).

14. Det. Conaway testified that he included the tools in the search warrant due to the consistency with the description in the law as burglars tools (see: Suppr. hrg. at 67). Petitioner was denied due process & was prejudiced by the addition of the tools in the addendum of probable cause for search warrant (Ex. B).

15. He also testified that "<u>Not anywhere in the collection of evidence</u> <u>in the case, in his reports, in any notes, or any reports, or any where</u> is there <u>ever</u> a mention of that phone call description (s) (see: Suppr. hrg. tr. at 60).

16. He also testified that <u>he only remembered it when his boss</u>

— 8 —

reminded him of it while going over the issues for the suppression hearing (see: Supp. hrg. at 61 & Ex. D).

17. He testified that the evidence he gathered from the car was going to be a Great part of his Probable cause for the huge (house) search warrant (see: Supp. hrg. at 68).

18. Petitioner's suppression hearing was "specifically" denied from the (Some further search), as court put it, "blow-by-blow" description(s) (phone call) det. Conaway said he recieved, the tools from car being labeled "burglar's tools", & the out-of-court declarant (see: Judges rational, Ex. A).

## TRIAL

19. The state called Ansie Conaway to trial & she testified adamantly on direct, cross & redirect that she never gave det. Conaway the "blow-by-blow" description's or any description that he used to solidify the Probable cause for the warrant-less search & seizure. Mrs. Conaway testified as follows (Verbatim):

(Cross)       A. "Sir, the only thing I remember was that I answered the Phone & he said he was Trooper Tim Conaway & he was at Bethany Beach & he thought there was two (2) boxes in the back of a car & it might be my silverware. Thats all I remember. He did not talk to me at length (see: Trial tr. at C-111-12).

20. She further testified that "she did not give det. Conaway any description's in the call at Bethany Beach (Petitioner's Jobsite), her testimony as follows (Cross) (Verbatim): Q. when did you tell him that?

A. Well, they wrote the report up that night, on the night it was missing, my silverware.

Q. I'm talking about the conversation with det. Conaway. Did you tell him the boxes were black?

A. Yes, on the Phone

Q. When he was calling from Bethany Beach or another Phone call?

A. <u>Not Bethany Beach</u>

Q. Did you Give him any other description?

A. <u>No, Sir</u>

Q. You didn't tell him the size of it or anything?

A. <u>No, Sir</u>   (See: Trial tr. at C-111-113).

## Prosecutorial Misconduct

C.          1. The Prosecution was aware of det. Conaway's false testimony & knew the warrantless search & seizure was unreasonable under the 4th Amendment to federal Constitution. U.S.C.A. Const. Amends. 4,14. The Proper role of the criminal Prosecutor is not simply to obtain a conviction, but to obtain a fair conviction.

          2. In <u>Brown v. Borg</u>, 951 F.2d 1011 (1991), the court held, the Prejudice to a defendant's right to a fair trial is even more palpable when the Prosecutor has <u>not only with held exculpatory evidence</u>, <u>but has knowingly introduced & argued false evidence</u>. The Prosecutor had a duty not to mislead the court or Jury. <u>Instead, she kept the facts secret</u> in <u>the face of a long-standing rule of Constitutional stature requiring disclosure</u>, & then Presented testimony in such a way to suggest the opposite of what she alone knew to be true: that det. Conaway Perjured himself concerning the Phone call, withheld/destroyed the exculpatory evidence (results) he was waiting on from S.B.I. (See: Prelim. hrg. at 53-54).

          3. Det. Conaway was the states Primary witness (he tied all the Pieces together). He Provided the foundation upon which the state built its entire case. The Court in <u>U.S. v. Wallach</u>, 935 F.2d 445 (2nd Cir. 1991) held, where Government was unaware of a witness Perjury, however, a new trial is warranted only if the testimony was <u>material</u> &" the court [is left] with a firm belief that but for the Perjured testimony, the defendant would most likely not have been convicted". Indeed, if it is established that the Government <u>knowingly permitted the introduction of false testimony</u> reversal is "virtually automatic."

4. The state attempted to rehabilitate her witness into agreeing that det. Conaway did bring her property to her home to I.D. & that the phone call description's took place instead of informing court & jury that det. Conaway committed perjury (she denied both) (see: Trial tr. at C-106-7, 115, & 118-19). The state had a <u>constitutional obligation</u> under the 14th Amendment to stop the trial & inform court that her witness testified falsely. <u>The trial court & Del. Supr. Ct. ignored the facts on this issue.</u>

5. The court held in <u>Pyle v. Kansas</u>, 317 U.S. 213, 215-16, 63 S.Ct. 177 (1942), <u>that a habeas Petitioner is entitled to freedom when his imprisonment was obtained thru the states</u> knowing use of perjured testimony. After <u>Brady</u> in <u>U.S. v. Agurs</u>, 427 U.S. 97, 104, 96 S.Ct. 2392 (1976), this court observed that it had "consistently held that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair & must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury".

6. It's undisputed that det. Conaway's testimony affected the judgment of the jury. Had state courts set aside the perjury in <u>any</u> pretrial hearing or set aside det. Conaway's testimony at trial or set aside the warrantless search & seizure, there would not be any evidence left to convict.

7. Because a <u>Schlup</u> claim involves evidence the trial jury didn't have before it, the inquiry the federal court to asses how reasonable jurors would react to the overall newly supplemented record (noting that "[I]n such a case, the habeas court may have to make some credibility assessments").

8. <u>Title 11 C.</u>[3] 1223 & 1235 (e) states:

Section 1223- A person is guilty of perjury in the 1st degree <u>when the person</u> <u>swears falsely & when false statement consist of testimony & is</u> <u>material to the action, proceeding or matter in which it is made.</u>

Section 1235(e)- A statement is "material" <u>when, regardless of its admissibility</u> <u>under the rules of evidence, it could have affected the course or</u> <u>outcome of the proceeding.</u>

✱ Det. Conaway's testimony was <u>manifestly untrue</u> & <u>it could have affected the course or</u>

— 11 —

<u>Outcome of the Proceeding</u>, Petitioner is entitled to habeas relief.

        9. In light of this new evidence, no reasonable juror would vote to find Petitioner Guilty. The evidence would have been suppressed. Petitioner has met the requisite Probability under <u>Schlup</u> that, Constitutional error has probably resulted in the Conviction of one who is actually innocent.

        10. It is undisputed that the suppression hearing was "specifically" denied from a phone call description that <u>never happened</u> & a "out of court" declarant that det. Conaway <u>created</u>, the detailed description was fabricated & with out the call, the case wouldn't have went to jury (See: Ex. A).

        11. In <u>Franks V. Delaware</u>, 438 U.S. 154, 98 S.Ct. 2674 (1978), the U.S. Supreme Court held that the Petitioner has to make a substantial showing that false statement's knowingly & intentionally, or with reckless disregard for the truth was included by affiant & if allegedly false statements is necessary to the finding of Probable cause, <u>4th amendment requires a hearing be held at defendants request</u>. If, after evidentiary hearing, defendant establishes by a preponderance of evidence that a false statement knowingly & intentionally or with reckless disregard for the truth was included by affiant & with false material set to one side, the affiants remaining content is insufficient to establish Probable cause, Search warrant must be voided & fruits of search excluded as same extent as if Probable cause was lacking on face of affidavit.

        12. Petitioner has established by preponderance of evidence the substantial showing that det. Conaway included false statements knowingly & intentionally, or with reckless disregard for truth & the statements were necessary to finding of Probable cause in both pre-trial hearing's & if the habeas court sets the false testimony to one side, det. Conaway's remaining content is insufficient to establish Probable cause & the search & Seizure must be voided. <u>FRANKS</u> Id.

        13. Delaware courts are close minded to a defendant challenging the veracity of statements of Police to Procure a search warrant. The Delaware Supreme Court held: " that <u>a defendant under no Circumstances may challenge the veracity of a sworn statement used by Police to Procure a search warrant</u>. Franks case at 2676 (Pg. 3).

14. Petitioner has put forth evidence of det. Conaway's own testimony on direct that "he never took the boots to the scene & make prints that matched". This is evidence of material perjury that affected the outcome of preliminary hearing. Petitioner was & continues to be deprive of liberty without due process. The Prosecutor had a duty to correct testimony she knew was false, notify Court & Jury when the wrong was discovered.

15. The U.S. Supreme Court held in <u>Napue V. Illinois</u>, 360 U.S. 264, 79 S.Ct. 1173 (1959), that "<u>a lie is a lie</u>", once it is established that a conviction obtained through use of false evidence, known to be such by representatives of the state, <u>must fall under the fourteenth Amendment to federal constitution</u>, citing <u>Mooney V. Holohan</u>, 294 U.S. 103, 55 S.Ct. 340 (1935).

16. Det. Conaway said he used the Conaway burglary as his lead burglary as far as evidence for search warrant (see: Trial tr. at D-165). The search warrant derived from the unreasonable search of the car, should have been suppressed as fruits of poisonous tree.

17. Petitioner has established (with constitutional violations) that it is more likely than not, no reasonable Jury would vote to find Petitioner Guilty & that constitutional violation has probably resulted in the conviction of one who is actually innocent, the requisite probability under <u>Schlup</u>.

## <u>A Different Result</u>

D        1. Petitioner respectfully moves the Court to set <u>all</u> the false testimony to one side in the preliminary hearing that was used to establish Probable Cause:

A) The "black" mustang, B) No Probable Cause Prior to coming to Jobsite, C) Tools being falsely labeled as

— 13 —

"burglars tools", D) "unknown" (out of court) Construction
Worker, E) taken Property to victim to be identified, F) taken
boots to field (scene) making prints that matched Petitioners
boots, G) Search Warrant for house. "No Phone Call"

*    2. Petitioner avers to the Court that the remaining content
left in the Preliminary <u>does not amount to Probable Cause by far.</u>

3. Petitioner respectfully moves the Court to set <u>all</u> the false
testimony to one side in the Suppression hearing that was used to establish
Probable Cause:

> A) People Getting in & out of the Car at the burglary, B) No
> Probable Cause Prior to coming to Jobsite (on a fact-finding
> mission), C) Tools in car labeled as Pry tools/burglary tools, D)
> No Phone call, E) No Probable Cause at Jobsite (not immed-
> iately apparent), F) No unidentified "out of court" declarant
> "Supposely" Saying Petitioner fled.

4. Petitioner avers to the Court <u>again</u> that without the Phone
Call description's alone & the out of court declarant that was never Produced, the
Suppression would have been <u>Granted</u> & the evidence Suppressed. <u>Petitioner is
entitled to relief, his habeas Petition Granted.</u>

## Trial

E.    1. The State in its opening Arguments Pointed out to the jury
that she had evidence to establish that Petitioners tool's are like ones Commonly
used to "break-in" residences when she <u>knew</u> none of the burglaries had any
evidence of Prymarks or screwmarks to link the tools to <u>ANY CRIME SCENE</u>. This
statement Prejudiced the jury & could have affected their judgment (see: Trial
tr. at A-76).

2. The State also allowed her witness (det. Conaway) to testify about the out of court declarant "telling him" that Petitioner fled upon seeing Police around his car (see: Trial tr. at E-12). The State knew the jury would be persuaded by what a sworn Peace officer would say on the stand under oath. Petitioners right to a fair trial & due Process of law was violated by a Prosecutor who wanted a conviction at the expense of Petitioners Constitutional rights to U.S. Constitution. U.S.C.A. Const. Amend. 14.

3. The State failed to meet its burden of Putting forth evidence that Put Petitioner inside any of the homes that were burglarized, an element of burglary 2nd. The only close Proximity was the field beside the Conaway residence where a size 10m boot Print was found. Det. Conaway testified in trial that "he didn't know" if the boots in trial (evidence) that were Published to the jury, were boots at Conaway burglary (see: Trial tr. at E 127-29).

4. Petitioner has enclosed an affidavit that he has <u>NEVER</u> worn a size 10 or 10m in his life nor has he ever owned a Pair of boots over the size 9 or 9½ (See: Ex. E). He has enclosed Commissary form(s) #661 (recievts) where he has Purchased sneakers since his arrival at D.C.C. in late 2001 that <u>NEVER</u> exceed a size 9 (See: Ex. F). <u>Petitioners boots in trial were not a size 10 or 10m.</u>

5. The Jury began deliberating on Sept. 23, 1999 & on Sept. 24, 1999, they had a Question (s) "<u>What incident do the Pictures Go with?</u>" "From which residence do the Pictures Pertain?" (Pictures of boot Prints) Once the Court told the jury "no more evidence can come in", <u>not even two (2) minutes after</u> they went to resume deliberating, they found him Guilty of the entire 50 Count indictment that led to Petitioner being sentenced to 112 yrs. level 5.

6. Had the state informed the Court & Jury that det. Conaway (her witness) committed Perjury about taking the boots to the field & making Prints that matched the boots (her Constitutional obligation), it is more likely than not, no reasonable Juror would have found him Guilty beyond a reasonable doubt. <u>Schlup</u> Supra (See: Trial tr. at H-3 to H-6). <u>Petitioner was denied a fair trial.</u>

7. Petitioner argues det. Conaway uncovered exculpatory evidence

, which squarely contracted the respondents account of the states evidence & destroyed it by falsely claiming Petitioners' Prints were found on his work boots, then det. Conaway claimed to have the statement from the Co-worker (declarant) when he arrived at Jobsite to investigate the crimes, which stated Petitioner absconded from the Jobsite upon det. Conaway looking in his car which was also false.

8. Petitioner argues that the suppression of this evidence violated state & Federal Constitutional obligation to disclose evidence favorable to his defense & support his Argument of being the wrong person charged. Brady V. Maryland, 373 U.S. 83 (1963). A Brady violation occurs when the Government fails to disclose evidence material favorable to the accused. 373 U.S. at 87.

9. The Supreme Court has held that the Brady duty extends to impeachment evidence as well as exculpatory evidence. U.S. V. Bagley, 473 U.S. 667, 676 (1985). And Brady suppression occurs when the Government fails to turn over evidence that is "known only to Police & not to Prosecutors", Kyles V. Whitley, 514 U.S. 419 (1995). The individual Prosecutor has a duty to learn of favorable evidence known to others acting on the Governments behalf in the case including Police. Kyles Id. at 437. "Such evidence is material if there is a reasonable Probability that, had the evidence been disclosed to the defense, the result of the Proceeding would have been different.

10. The reversal of a conviction is required upon a "showing that the favorable evidence could reasonably be taken to Put the whole case in such a different light as to undermine confidence in the verdict." Id at 435.

11. Petitioner moves the Court to evaluate the tendency & force of the undisclosed evidence item by item. There would be no other way the Court could evaluate the cumulative effects for the Purposes of materiality separately.

12. Petitioner has met the requirements under Schlup & is entitled to habeas relief. He has Put forth the requisite Probability that Constitutional error has Probably resulted in the conviction of one who is actually innocent, & its more likely than not no reasonable Juror would find him Guilty beyond a reasonable doubt. Schlup Supra.

## ALL CASES Cited below deal with Trial Court & Delaware

F.

— 16 —

## Supreme Courts reliance of Out of Court declarant

1. The Del. Supr. Ct. & the trial Court (in Post-Conviction) relied on the following cases to justify the out of court declarant, none of the cases either court cited, apply to Petitioner.

A. Thompson V. State, Del. Supr., 539 A.2d 1052 (1988).

i) Rape Case, warrantless felony arrest, defendant was suspect in unrelated but similar case. 2) Thompson "voluntarily consented" to DNA samples (head & Pubic hair) that proved crucial against him (very close match). 3) Thompson's tennis shoes matched Plaster cast molds. 4) Facts & Circumstances within the police' knowledge (at that moment) & which had reasonable trustworthy information were sufficient to warrant a prudent man into believing the person had committed or was committing an offense.* Det. Conaway did not have this.

B. Tatman V. State, Del. Supr., 494 A.2d 1249 (1985).

1) Drug Case (Auto search). 2) declarant / informant Provided Police with "tip". 3) The Police verified "tip" by calling two informants who Provided reliable information in Past. 4) Police own observation as well as information from the informants. 5) took vehicle to firehouse to search. * Det. Conaway did not have this.

C. State V. Stecher, Del. Supr., 1970 WL 115843.

1) Drug related Case. 2) Probable cause used: occupants in car in known drug area, defendant known to police as user, person went to car was admitted seller, it appeared to Police to be a transaction. 3) Area was known drug drop area. 4) Previous informants told Police, defendant & other occupants of car were drug users. 5) Police observed car driven by defendant Pull in Parking lot. 6) Police had reason to believe thru-Previous investigations & arrests. 7) Police seen what he thought was drug transaction (hand in Pocket, hand to car, hand back in Pocket)* Det. Conaway did not have this.

D. Hooks V. State, Del. Supr., 416 A.2d 189 (1980).

1) Murder Case. 2) Out of court declarant (informant) <u>was a member of law enforcement</u>, he came across information in course of his official duty with no personal interest in false arrest.* <u>Det. Conaway did not have this</u>.

E. <u>Downs V. State</u>, Del. Supr., 570 A.2d 1142 (1990).

1) Drug Case. 2) Police had reasonable suspicion from 4 telephone tips over 3 week period. 3) Car described, <u>location of drug deals given in particular</u>, 2 tips were not anonymous & one contained <u>highly specific information</u> regarding alleged transaction. 4) <u>Police relied on fact</u> was 4th tip in 3 weeks about a <u>blue Z 24 car dealing in drugs in a specific place</u>. 5) Police already suspected that someone in a blue Z 24 was involved in drug trafficking.

    **2.** The trial court denied Petitioner's Post-Conviction motion "<u>Verbatim</u>" from that of Del. Supr. Ct. decision on his direct appeal, <u>cited same case law</u> (see: Super. Cts. denial & Del. Supr. Ct's. denial of dir. appeal, Ex. G). Petitioner <u>NEVER</u> had a chance at state level on <u>any</u> of his claim's, he was denied a full & fair opportunity to present his claim's.

    3. The cases (A thru-E) <u>had nothing to do with the declarant in Petitioners case</u>. The state was <u>required by law</u> to <u>produce</u> declarant & failed to do so, yet was allowed to <u>reveal the statements thru- det. Conaway</u> & use them as affirmative evidence against Petitioner without ever calling declarant to court in violation of Petitioners 5th, 6th & 14th Constitutional rights to federal Constitution. U.S.C.A. Const. Amends. 5, 6, 14.

    <u>The standard/Requirements of "Contrary to" or "Unreasonable Application" of Clearly established federal law.</u>

**6.**     1. The U.S. Supreme Court held in <u>Williams V. Taylor</u>, 529 U.S. 362, 405 (2000) that "Contrary to" means that a state court, (1) arrived at a conclusion on a conclusion on a question of law opposite to that reached by the Supreme Court;

or (2) When confronted with materially indistinguishable facts from a Supreme Court Precedent arrived at an opposite result. 529 U.S. 362, 405 (2000).

       d. "Unreasonable Application" means that a state Court (1) identifys the correct legal rules but Unreasonably applies it to facts of the case; or (2) unreasonably refuses to extend the legal Principle to a new Context. Williams at 405.

       3. Petitioner submits the enclosed Constitutional Claims are reviewable by this Court because of the state courts "unreasonable application" of Brady V. Maryland in which the U.S. Supreme Court established a criminal defendants' right to discovery of favorable materials, which Petitioner was denied by State Court Proceedings:

       A) Petitioner was denied "the results" from S.B.I. of boot Prints (exculpatory evidence), B) Was denied Production of out-of-Court declarant, C) was denied (State Suppressed) evidence of det. Conaways material Perjury which directly affected the outcome of the Pretrial hearings.

       4. And then failed to Apply the Brady rule in his Post-Conviction Proceedings in state Court. The state Court's opinion / denial is as follows:

       On Page 4, the trial court said; "it would be more Judicially economical to eliminate Petitioners first & third claims (Prosecutor misconduct & abuse of discretion) in his Post-Conviction motion." The only Ground the trial Court Gave any Consideration to, was Ineffective Assistance of Counsel.

       5. The Court also held in Par. 11 (P9.6) that "ordinarily, differences in testimony are credibility issues to be determined by the trier of fact". The Court NEVER settled this dispute. There is no evidence in the record as to why the Court believed det. Conaways testimony concerning the descriptions over states other witness denying that she Gave the description to him at Jobsite. The Court never Put on record where came up with det. Conaway was telling the truth. The court never Gave any explanation as to how it resolved the credibility between two state witnesses.

6. From the ruling, Petitioner draws an inference that the court believed the witness when she testified that the silverware (Property) was hers but not when she said the descriptions never happened adamantly & consistently on direct, cross, & redirect examination. The court was obligated to resolve the conflict on record.

7. Even assuming arguendo, that def. Conaway did not commit Perjury, the warrantless search & seizure is still unreasonable under 4th Amendment due to him "conducting some further search of the item" because the items character was not immediately apparent, the Plain View doctrine cannot justify the seizure. Minnesota & Horton Supra.

<u>Warrantless Search and Seizure</u>

8. In the case at bar, Petitioner avers the State Court's decision in his Post-conviction Proceeding is contrary to clearly established Federal law by the U.S. Supreme Court in <u>Minnesota V. Dickerson</u>, 508 U.S. 365 (1993), <u>Horton V. California</u>, 496 U.S. 128 (1990), <u>Franks V. Delaware</u>, 438 U.S. 154 (1978). The U.S. Supreme Court held in <u>Horton</u> & <u>minnesota</u>, "if the Police lack Probable Cause to believe that an object in Plain View is contraband <u>without conducting some</u> <u>further search of the object</u> - i.e. if its incriminating character [is not] immediately apparent'", <u>the Plain View doctrine cannot Justify its Seizure</u>. The Court allowed def. Conaway to "conduct some further Search of the Property" because "he wasn't sure" of what he was viewing in Plain View in violation to <u>Minnesota</u> & <u>Horton</u> & Petitioners right to be free of unreasonable Searches & Seizures & due process of law.

9. The Court on PG. 7 (Par. 12 thru 14) labeled def. Conaways testimony inconsistent to that of States other witness. The testimony is no longer inconsistent when it was material to action or Proceeding or necessary to finding of Probable cause. The Courts decision is contrary to clearly established Federal law by U.S. Supreme Court in <u>Franks V. Delaware</u>, 438 U.S. 154 (1978). The totality of the circumstances described at the suppression hearing constituted Probable Cause <u>only with the</u>

detailed descriptive Phone call, out of court declarant that was never Produced ‡ falsely labeling Petitioners tools as burglars tools.

10. The court on PG. 9 said that facts surrounding Petitioners boots were Pertinent to the Rule 61 motion. The court did not have facts right because it said the Police compared the boots to bootPrints at one of crime scenes ‡ they matched when det. Conaway admitted at trial that he did not take boots to any scene. The court also said the boots ‡ boot Prints were introduced at trial. The courts decision not making the state turn over "the results" (exculpatory evidence) from S.B.I is contrary to the U.S. Supreme courts decision in Brady V. Maryland, 373 U.S. 83 (1963), Kyles V. Whitley, 514 U.S. 419 (1995), U.S. V. BAGLEY, 473 U.S. 667 (1985). Had court made state turn over the suppressed results (exculpatory evidence), the result of the Proceeding would have been different. Had defense had results ‡ jury aware of det. Conaway lying about taken boots to scene ‡ making Prints that matched, the outcome would've been different. California V. Trombetta, 467 U.S. 479 (1984).

11. The courts decision on the Perjury Claim's was decided by the court contrary to the U.S. Supreme courts decision in Napue V. Illinois, 360 U.S. 264 (1959), Mooney V. Holohan, 294 U.S. 103 (1935), U.S. V. Wallach, 935 F.2d 445 (1991), Pyle V. Kansas, 317 U.S. 213 (1942), ‡ U.S. V. Agurs, 472 U.S. 97 (1976). The court on PG. 11 said there is nothing establishing that det. Conaway Perjured himself ‡ nothing requiring a finding that states other witness version was correct version. The court accepted states witness when she testified that the silverware was hers so it became Plain/reversable error when the court said her version of events of Phone call was not correct version. The court did not impeach or discredit any of her testimony or declare her a hostile witness. The court was required under Franks V. Delaware ‡ the above to hold a hearing under the fourth Amendment to state ‡ federal Constitution. U.S.C.A. Const. Amend. 4.

## Intrinsic Fraud in State Court Proceedings

The state court decision rest on fraud committed by det. Conaway in the

seizure of items which were used to convict Petitioner at trial & obtained in violation of his Federal fourth Amendment right. In the case at bar, det. Conaway claimed he went to Petitioners worksite & viewed items in his car, he then phoned the victim to identify the items (see: Supp. hrg. tr. at 59). However, at trial, Mrs. Conaway testified to NOT identifying the items or giving any description's in the call at Bethany Beach (worksite) (See: Trial test. at C-106 to C-119). Thereafter making a claim for Probable cause "A fraud in Fact" to the state Court which failed to address the issue in these Proceedings. Illinois V. Gates, 462 U.S. 213, 238 (1984); Steagald V. U.S., 451 U.S. 204, 212 (1981). Whether the claim was draped in a "Perjury" or here a "Intrinsic Fraud" upon State Court Proceeding which denied Petitioner his right to a full & fair hearing in State Court. Stone V. Powell, 428 U.S. 465, 481-82 (1976).

12. Petitioner has put forth evidence showing the Court det. Conaway's own false testimony concerning Probable Cause Prior by testifying that he did not take boots to scene & make prints that matched Petitioners boots as all other witnesses for state. For instance, the Court was aware det. Conaway (in Pretrial hrs) falsely testified that, the witness (Jeff Donaway), told him the mustang was "black" not the Possibility of three (3) colors (black, dark Green or dark blue) as court said on PG 11. (section b), it wasn't revealed until trial when the witness testified that the color of car was one of above three colors. (See: Prelim. hrg. tr. at 7). This testimony was also concerning the steps pertaining to Probable cause which was false.

13. The Court on PG. 12 & 13 said the detailed testimony det. Conaway gave concerning taken the boots to scene (Prelim. hrg. tr. at 54) was inconsistent with his trial testimony saying he didn't take to scene (see: Trial tr. at C-159 to 160). Det. Conaway was given "material" testimony establishing Probable cause & his testimony was intentional & manifestly untrue making it Perjury by law.

14. The Court on PG. 13 & 14 (#3) attempted to address Title 11 C. §3507 (out of court declarant) by saying Petitioner should argue D.R.E 801 & 802, D.R.E. 801 as well as F.R.E. 801 Provides almost exact language as §3507, the only way a declarants out-of-court statements can be used as affirmative evidence is, declarant has to be

Present in court at trial or hearing, not introduced thru the testimony of det. Conaway. Hearsay is permissible to establish probable cause only where declarant is past proven reliable. The state nor the court put forth any evidence that declarant was reliable, let alone existed.

H.              Ineffective Assistance of Counsel

        In order for a Petitioner to succeed on a claim of ineffective assistance of counsel, the U.S. Supreme Court held in Strickland V. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), that a Petitioner must show that Counsel's performance fell below an objective standard of reasonableness & must show Counsel's deficient performance prejudiced his defense. Kimmelman V. Morrison, 477 U.S. 365, 374 (1986).

        The right to effective assistance of counsel at every stage is guaranteed by the sixth Amendment to the U.S. Constitution forms the very heart & soul of our federal criminal justice system because it protects "the fundamental right to a fair trial". Strickland V. Washington, 466 U.S. 668 (1984). However, the representation must be effective to fulfill the Constitutional necessities of the sixth Amendment. Kimmelman supra. Effective lawyers are "essential because they are the means through which the other rights of the person on trial are secured". United States V. Cronic, 466 U.S. 648, 653 (1984). The defense of criminal cases, where a persons life & liberty are at stake, requires an all-consuming committment to the client.

        Pretrial Ineffective Assistance of Counsel

        1. Defense counsel never investigated the 3507 declarant that told det. Conaway Petitioner absconded from the jobsite. Had counsel investigated, he would have known the declarants identity was never obtained & could have

-23-

argued to suppression court that his statements could not be used as affirmative evidence or re-vealed thru- the testimony of det. Conaway unless he/she was going to be an in-court witness. Keys V. State, Del. Supr., 337 A.2d 18 (1975). The trial Court Could not show or believe, if the worker was located, would have said what det. Conaway said either. The state had to Produce this witness before relying on the out of court statements against Petitioner. Det. Conaway used the statements to Perform the warrant-less Search & Seizure. Had Counsel objected & requested Court to make State Produce the declarant Pursuant to Title 11c. §3507 & Petitioners Constitutional Confrontation rights to federal Constitution, the state would not have had the exigent Circumstance of some unknown Person suspposely telling det. Conaway that Petitioner absconded upon seeing Police looking in his windows. This would have been a detrimental blow against the state. Counsel was ineffective & by not objecting caused Prejudice to his defense, denied him a fair hearing, due Process of law & effective assistance of Counsel, a reasonable Probability exists & outcome would have been different.

   2. Petitioner was made aware for first time that the identity was not obtained by state in the trial Courts denial of his Post Conviction motion. Petitioner was denied due Process of law in his Pretrial (Probable cause) hearing's & effective Counsel. U.S.C.A. Const. Amends. 5,6,14.

   3. Counsel was attempting to suppress the warrantless Search & Seizure, the Production of the declarant was a crucial factor & Counsel was ineffective for failing to investigate & knowing if he/she did or did not exist. Counsel allowed (without objecting) the state to use the statements as affirmative evidence. Counsels represent-ation fell below the objective standard of reasonableness & a reasonable Probability existed that, but for Counsels Unprofessional errors, the result would have been different. Strickland Supra.

   4. Counsel also allowed (without objection) det. Conaway to testify about calling a victim (states witness) to Get a description of the Property she was missing. He wasn't sure the items he was viewing belonged to the victim, the character of the items was not immediately apparent.

5. Counsel was ineffective for not objecting & citing the relevant caselaw that the U.S. Supreme Court established in Minnesota V. Dickerson, 508 U.S. 366 (1993) & Horton V. California, 496 U.S. 128 (1990), that since the items character was not immediately apparent to det. Conaway, he could not conduct some further search of the item's under the Plain View doctrine. Had Counsel objected to the Phone call as well as the out of court declarant, the outcome would have been different.

6. Counsel was equally ineffective for not objecting & requesting for the victim to be a witness in the suppression, her testimony would have shown (as it did in trial) that det. Conaway committed perjury concerning probable cause due to the descriptions never happening. The trial Court ultimately relied on the descriptions & declarant to deny the hearing. Petitioners defense was prejudiced by his counsels deficient representation.

7. Counsel could have argued that det. Conaway did not testify to the call in Prelim & he couldn't even remember it without "supposely" being reminded of it (because it never happened) by his boss while going over the issues for the suppression hearing. The sixth amendment mandates that state bear risk of Constitutional deficient assistance of Counsel. Kimmelman Supra.

8. Petitioner avers his Fourth Amendment claims pursuant to Kimmelman V. Morrison, in that trial counsel failed to conduct pretrial investigations altogether into the officers probable cause affidavit for search of car & house warrant. Delaware V. Prouse, 440 U.S. 648, 654-655 (1979). where a special Need" precludes insistence upon some Quantum of individualized suspicion' other safeguards are Generally relied upon to assure that the individuals reasonable expectation of Privacy is not subject to the discretion of the official in the field." The Court & no objection by counsel allowed det. Conaway to enter into Petitioners car & seize Property without first establishing Probable cause to believe items were Property stolen in a Burglary. Moreover, det. Conaway's testimony established he used "fraud in the inducement" of the outcome of the

Suppression hearing in state court by giving false testimony during (Prelim) &
Suppression & at trial, as to Probable cause used, because of the "fraud" Petitioners
Pretrial (Probable Cause) hearings were denied.

9. Petitioner claims all the Policies in Place under Prouse, 440
U.S. at 650, which rein in officers & furnish a bulwark against the arbitrary
exercise of discretion that is the height of unreasonableness were violated under
state courts decision in State V. Reeder (see: Suppr. decision, Ex. A). Petitioner has
satisfied the requirements under Strickland to prove his counsel rendered
ineffective assistance in Pretrial hearings, Counsels representation fell below
an objective standard of reasonableness. Counsels deficient Performance
rendered irreparable Prejudice to Petitioners right to counsel & due Process of law.

## Trial ineffective Assistance of Counsel

1. Counsel was ineffective for not objecting in trial to states
opening Arguments. The state pointed out to Jury that she had evidence to establish that
Petitioners tools are like ones commonly used to "break-in" residences. Counsel knew there
there wasn't any evidence of Primarks or screw marks at any scene. His failure to object
allowed state to mislead / Prejudice the Jury.

2. Counsel was ineffective for not requesting the trial court to Put on
record the standard to follow on how he believed det. Conoway over states other witness
when she denied everything in trial that he Put forward establishing Probable cause in
Suppression hearing. The trial court cannot believe some of her testimony (where
she said the Property was hers) & not when she denied the description simply because
det. Conoway needed them for his Probable cause.

3. Counsel was equally ineffective for not even attempting to
Cross-examine det. Conoway at all about the (so-called) "blow by blow" description
that states other witness denied given him. Petitioner draws an inference, that
trial counsel didn't Point out to court & Jury due to the friendship counsel had with det.

. They attended the same school & had same classes (see: Trial tr. at E-102-3). This failure by counsel was a critical blow to Petitioners due Process right to a fair trial. The Jury & court never knew about his suppression testimony. Counsels Performance at trial clearly shows he was not on Petitioners side, in that he was denied effective assistance of Counsel Guaranteed by U.S. Constitution. U.S.C.A. Const. Amends. 6, 14.

4. Counsel never objected & Point out to Jury & Court that det. Conaway Perjured himself about taking boots to field & make Prints that matched petitioners. The Jury had a Question about what incident (Burglary) does the boots go with. Had Counsel objected & Point out to court & Jury that det. Conaway Perjured himself concerning taken boots to scene i it is more likely than not the Jury would have ruled for Petitioner, outcome would have been different. Counsel would have also revealed that state was ignoring her Constitutional Obligation under 14th amendment to notify court/Jury whenever her witness(s) lie under oath.

5. Counsel's incompetence allowed state to Proceed with trial without affording Petitioner an opportunity to challenge the veracity of det. Conaway's Probable cause & change the decision of suppression outcome. Counsel had the evidence he needed to show trial Court the officers perjured himself in both Pretrial hearings concerning Probable cause. Counsel ignored all the Perjury & denied Petitioner effective assistance of counsel, a fair trial & due Process of law.

6. Counsels failure to Present the facts of the case & argue to the Jury & trial court these facts, Caused Prejudice to Petitioner & violated his Federal & State Constitutional rights. The Petitioner would have Prevailed on his defense at trial, had Counsel Presented the inconsistent statements as Perjury due to the materiality of the statements & that they were necessary to finding of Probable cause during Prelim, suppression & before the Jury & on direct appeal of right to Del. Supr. court, & because he did not, Counsel was ineffective. U.S. v. Magellanes, 10 Fed. Appx. 778 (10 Cir. 2001).

7. Counsel did not Point out everything as a whole to court which would have made case show that there wasn't any Probable cause & Petitioner was denied

his right to be free from unreasonable searches & seizures & due Process of law.

8. Counsel could have Presented a coherent argument of Police Perjury to jury Pursuant to Tejeda V. Dubois, 142 F.3d 18 (1998), Counsel also failed to obtain "the results from S.B.I." (Rodney Hegman) & failed to file a Brady violation arguing state withheld/Suppressed favorable exculpatory evidence. (See: Prelim. hrg. tr. at 54)

9. Counsels failure to obtain these results denied Petitioner his right to a fair trial under U.S. Constitution. U.S.C.A. Const. Amend. 14. Had counsel obtained the favorable exculpatory evidence (Results from S.B.I) he would have evidence to Prove Petitioner was not in field or more evidence that det. Conaway Committed Perjury Pursuant to Title 28 U.S.C. § 1746, Title 18 U.S.C. § 1621; Title 11 c. § 1223 & Title 11 c. § 1235 (e). Counsels Performance was deficient in its entirely, his unProfessional errors rendered trial fundamentally unfair & unreliable. U.S.C.A. Const. Amends. 6, 14.

10. Counsel was also ineffective for not renewing the Suppression motion under Franks V. Delaware, 985. Ct. 2674 (1978), after states witness (Angie Conaway) testified on direct, cross & redirect adamantly that she did not Give det. Conaway the descriptions at Petitioners Jobsite (see: All of her testimony at C-104 to C-119). The record was clear at that Point, that det. Conaway did not have Probable cause before coming to Jobsite, did not have any surface at Jobsite due to items character not being immediately apparent, & it did not surface after his "further search of the item(s)" because the Phone call descriptions never happened.

11. The Hon. Judges were different from Suppression (Hon. Henley T. Graves) to trial (Hon. Richard Stokes) & Counsel was ineffective for not moving to resubmit Suppression motion to suppress det. Conaways blow by blow Phone call due to his reckless disregard to Petitioners Constitutional rights & wilfull disregard for the truth. Had Counsel renewed the motion & Put forth the Franks issues, a reasonable Probability existed & the outcome would have been different. U.S.C.A. Const. Amend. 6.

## Direct Appeal Ineffective Assistance of Counsel

1. Counsel rendered ineffective assistance on direct appeal for not arguing that state relied on Perjured testimony to solidify Probable cause, state with holding favorable exculpatory evidence, not producing declarant before relying on statements as affirmative evidence. & Court never putting its credibility dispute on record as to how or why it believed one witness over the other. Counsel Prejudiced the outcome of direct for not raising "dead bang" winners. This was counsels opportunity to direct Court to relevant caselaw to support the constitutional violation's & appeal.

2. Counsel was also ineffective for not filing a reply brief on his behalf. Petitioner contacted Counsel (via) certified U.S. mail requesting to file a reply brief in his behalf & to cite the relevant case law (see: Ex. H.) Counsel blatently ignored his request as he ignored his Constitutional rights through out Pretrial stages & trial.

3. Petitioner has shown he is entitled to this courts jurisdiction because the state courts decision is contrary to clearly established Federal law as established by the United States Supreme Court in <u>Strickland</u>, <u>Kimmelman</u>, & <u>Stone</u>. Petitioner has also shown that a reasonable Probability does exist, that but for counsels representation, fell below an objective standard of reasonableness, that his defense was Prejudiced by counsels ineffectiveness.

4. <u>Petitioner is entitle to Habeas relief.</u> Errors that undermine confidence in the fundamental fairness of the state adjudication certainly justify the issuance of the federal writ.

## Entitlement to evidentiary hearing at Federal Level

I.     1. Petitioner avers that he is entitled to an evidentiary hearing pursuant to <u>Earp V. Ornoski</u>, 431 F.3d 1158 (2005). Hearing on federal habeas claim is required if (1) Petitioner has established colorable claim's for relief by alleging specific facts that, if proven, would entitled him to habeas relief, & (2) he did not recieve a full & fair opportunity to develop those facts. Petitioner has never been afforded state or federal

hearing on such claim's. Therefore the failure to hold a hearing would result in a "fundamental miscarriage of justice" Kelley V. Sec'y for the Dept. of Corr., 377 F.3d 1317, 1337 (11th Cir. 2004). Here, the Petitioner can show due to det. Conaway's false representation of the evidence, he could have shown his 4th amendment rights were violated by the unreasonable Search & Seizure & subsequent Search.

2. In seeking evidentiary hearing on claim of Prosecutorial misconduct, federal habeas Petitioner did not need to Prove that Prosecutor committed misconduct or that his due Process rights were violated, but, rather, needed only to allege a colorable claim for relief. U.S.C.A. Const. Amends. 14. Petitioner was Prejudiced by the state Prosecutor's misconduct in Prelim, in the suppression & in trial. Petitioner is entitled to evidentiary hearing on all his claim's advanced in his habeas Petition.

3. The U.S. Supreme Court established in Townsend V. Sain, 372 U.S. 293, 83 S.Ct. 745 (1963) (overruled on other grounds in Keeney V. Tamayo-Reyes, 504 U.S. 1, 5, 112 S.Ct. 1715 (1992) that a defendant is entitled to an evidentiary hearing if he Can show that:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full & fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full & fair hearing.

4. Townsend, 372 U.S., at 313, 83 S.Ct. 745. IF the defendant can establish any one of those circumstances, then the state Courts decision was based on an unreasonable determination of the facts & the Federal Court can independently review the merits of that decision by conducting an evidentiary hearing. See Taylor V. Maddox,

366 F.3d 992, 1001 (9th Cir. 2004). ("IF, for example, a state court makes evidentiary findings without holding a hearing & giving Petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts").

Petitioner has established a colorable claim for relief & has never been afforded a state or federal hearing on his claim's A thru H. An evidentiary hearing is needed to develop material facts which support his claim's. The state court record & findings were error & require relief as a matter of law.

WHEREFORE, Petitioner respectfully request that this Hon. Court Grant & Issue this Habeas Corpus fully.

DATED: April 29, 2007

Respectfully Submitted,
Kemmy Reeder #253949
1181 Paddock Rd. D.C.C.
Smyrna, DE. 19977

SUPERIOR COURT
OF THE
STATE OF DELAWARE

RICHARD F. STOKES
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5264

May 26, 2005

Kenneth Reeder
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

RE: State v. Reeder, Def. ID# 9901009851A

DATE SUBMITTED: February 24, 2005

Dear Mr. Reeder:

Pending before the Court are a motion for postconviction relief which defendant Kenneth

Reeder ("defendant") has filed pursuant to Superior Court Criminal Rule 61 ("Rule 61") and a

motion to correct his sentence filed pursuant to Superior Court Criminal Rule 35(a) ("Rule

35(a)"). Defendant has requested that the Court hold a hearing on the Rule 61 motion. However,

because the matters may be decided based upon the filings before the Court, no need exists to

hold a hearing.

This is my decision on the pending motions.

In September, 1999, defendant was tried before a jury on a multitude of charges arising

from numerous residential burglaries which took place in December, 1998 and January, 1999. On

1

September 24, 1999, a jury found him guilty of thirty-two (32) felonies and eighteen (18) misdemeanors. Because defendant was declared an habitual offender pursuant to 11 Del. C. § 4214(a),[1] this Court sentenced him to eight (8) years each at Level 5 on fourteen (14) of the convictions for a total of one hundred twelve (112) years at Level 5. On the remaining convictions, defendant was sentenced to incarceration suspended for probation. The Supreme Court affirmed. Reeder v. State, 783 A.2d 124 (Del. 2001), reargu. den., Del. Supr., Nos. 552, 1999 and 583, 1999, Steele, J. (May 21, 2001). The mandate was issued on May 22, 2001.

## Rule 61 motion

On March 23, 2004, defendant filed his pending postconviction motion, which he amended several times thereafter. Defendant's attorney who represented him both at trial and on

---

[1]In the applicable version of 11 Del. C. §4214(a), it is provided as follows:

(a) Any person who has been 3 times convicted of a felony, other than those which are specifically mentioned in subsection (b) of this section, under the laws of this State, and/or any other state, United States or any territory of the United States, and who shall thereafter be convicted of a subsequent felony of this State is declared to be an habitual criminal, and the court in which such 4th or subsequent conviction is had, in imposing sentence, may in its discretion, impose a sentence of up to life imprisonment upon the person so convicted. Notwithstanding any provision of this title to the contrary, any person sentenced pursuant to this subsection shall receive a minimum sentence which shall not be less than the statutory maximum penalty provided elsewhere in this title for the 4th or subsequent felony which forms the basis of the State's petition to have the person declared to be an habitual criminal except that this minimum provision shall apply only when the 4th or subsequent felony is a Title 11 violent felony, as defined in §4201(c) of this title. Notwithstanding any provision of this title to the contrary, any sentence so imposed pursuant to this subsection shall not be subject to suspension by the court, and shall be served in its entirety at a full custodial Level V institutional setting without benefit of probation or parole, except that any such sentence shall be subject to the provisions of §§ 4205(h), 4217, 4381 and 4382 of this title.

2

appeal ("trial counsel") has submitted an affidavit in response to the Court's request he do so.

Defendant has raised numerous grounds for relief. However, before reviewing those grounds, I first must determine if some threshold procedural bars apply pursuant to Rule 61(i).[2]

The motion is not time-barred pursuant to Rule 61(i)(1), since it was filed within three (3) years from the date the Supreme Court issued its mandate on the appeal. Because this is defendant's first motion for postconviction relief, Rule 61(i)(2), which precludes the consideration of any claim not raised in a previously-filed postconviction motion, does not apply.

------

[2]In Superior Court Criminal Rule 61(i), it is provided as follows:

*Bars to relief.* (1) Time limitation. A motion for postconviction relief may not be filed more than three years after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than three years after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

(2) Repetitive motion. Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim in warranted in the interest of justice.

(3) Procedural default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows

(A) Cause for relief from the procedural default and

(B) Prejudice from violation of the movant's rights.

(4) Former adjudication. Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred, unless reconsideration of the claim in warranted in the interest of justice.

(5) Bars inapplicable. The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

3

✳ Starts on this page   ✳

The bars which are applicable to defendant's first and third claims (prosecutorial

misconduct and abuse of discretion by the trial court) are those contained in Rule 61(i)(3) and

(4). Those bars possibly may be overcome, but frankly, rather than going through the procedural

bars and exceptions thereto, it is more judicially economical to eliminate those grounds because

they are based upon factually and/or legally meritless premises.[3] Defendant asserts ineffective

assistance of counsel as his second ground of relief. He lists forty-eight (48) ways in which trial

counsel was ineffective. Vague, conclusory allegations fail.

I do not examine a claim in this decision unless defendant provided concrete allegations

regarding it. Thus, unless a claim is addressed below, it is denied because it was vague and/or

conclusory.

The Delaware Supreme Court, in its decision on defendant's appeal, frames the case

against defendant and the legal issues raised. Thus, I quote therefrom.

> 1. Following trial, a jury convicted Kenneth Reeder of 32 felonies and 18
> misdemeanors arising from 14 residential burglaries that occurred in late 1998 and
> early 1999 in Sussex County. Reeder appeals his convictions arguing that the
> Superior Court erred when it denied his motion to suppress evidence obtained
> during a warrantless search of his car and a later search of his residence pursuant
> to a search warrant. Arguably, the evidence seized proved crucial to his
> convictions.
>
> ***
>
> 4. This Court's determination of whether police have probable cause to search an
> automobile is a mixed question of fact and law. n1 ***
>
> - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -
>
> n1 _____ (1998). As appellant characterizes his

---

[3]Defendant repeats the same basic arguments. Thus, although his moving papers are
lengthy, the substance of them is limited.

4

motion, the search of his residence with a warrant is improper only as "fruit of the poisonous tree" from the car search.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

5. Detective Timothy Conaway investigated the residential burglaries for which the jury convicted Reeder. A witness to one burglary indicated that the burglar possibly used a dark-colored Mustang 5.0 with temporary tags. Reeder became a suspect in the burglaries after police stopped him during a routine crime prevention check while he was driving a dark-colored Mustang. Reeder's record indicated that he had been arrested several times for similar crimes.

6. Detective Conaway, accompanied by Detective Sutton and a Bethany Beach Officer, Patrolman Mumford, went to Sea Colony in Bethany Beach where they believed that Reeder worked as a construction worker. While looking for Reeder, in order to question him about the burglaries, Detective Conaway saw two silverware cases and a "Lost Boys" cassette in the backseat of a dark-colored Mustang. The Mustang belonged to Reeder. These items matched descriptions of property taken in two of the burglaries. A worker on the site approached the police and indicated that Reeder "took off, dropping everything" after seeing the police. Detective Conaway began to pursue but immediately stopped fearing that Reeder might be armed. The police then searched Reeder's car, recovered the stolen items and found a set of pry tools. The police then obtained a search warrant and searched Reeder's residence. They found more stolen items in Reeder's residence. The police later arrested Reeder for crimes related to the burglaries.

7. Reeder filed a motion to suppress all the evidence seized from his car and residence.

8. Reeder argues that the Superior Court abused its discretion when it denied his motion to suppress the evidence found in his car and residence. Reeder argues that the warrantless automobile search was impermissible because the police lacked probable cause to conduct the search and because there were no exigent circumstances requiring the Detectives to search the vehicle before obtaining a search warrant. Reeder asserts that if the initial automobile search was impermissible, then proper application of the exclusionary rule requires the suppression of the evidence discovered during the later search with a warrant of his residence.

9. Ideally, police will obtain search warrants before any search of an individual's home or property; however, the law recognizes that a search without a warrant can be reasonable in some instances. Therefore, courts have described several exceptions to the warrant requirement. Warrantless searches of an individual's home require that police have probable cause to believe that the fruit or

5

instrumentality of a crime is within the home and that exigent circumstances require the immediate search to prevent the destruction of the evidence. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 ~~See Minnesota v. Olson~~, 495 U.S. 91, 92, 109 L. Ed. 2d 85, 110 S. Ct. 1684 (1990) (describing the appropriate standard as entry may be justified by hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to the police or others; but, in the absence of hot pursuit, there must be at least probable cause to believe that one or more of the other factors were present and, in assessing the risk of danger, the gravity of the crime and likelihood that the suspect is armed should be considered.").

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

10. Delaware cases describe a broader exception when the police conduct a warrantless automobile search. "So long as the police have probable cause to believe that an automobile is carrying contraband or evidence, they may lawfully search the vehicle without a warrant." n4 This is because vehicles are mobile by nature, and this mobility increases the likelihood that crucial evidence could be lost or destroyed if not searched for immediately. Therefore, the Courts determine whether it would be reasonable for a search to be conducted without a warrant if sufficient probable cause existed, given the totality of the circumstances, in order to justify the search. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 ~~[illegible citation]~~, 494 A. 2d 1249, 1251 (1985).

n5 ~~[illegible citation]~~.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

11. Reeder argues that the information Detective Conaway possessed when he searched Reeder's car was sufficient to justify a warrantless search only if he had, in fact, received a description of the stolen silverware cases from Mrs. Conaway. Ordinarily, differences in testimony are credibility issues to be determined by the trier of fact; however, Reeder argues that credibility determinations should be subject to review if, on the face of the record, the testimony of a witness is inconsistent and that inconsistency is based on an attempt to tailor testimony to nullify any constitutional questions about the search. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 ~~[illegible citation]~~ (indicating that appellate courts may review determinations of credibility made by the trier of fact, if a witness'



testimony includes statements which were obviously made to avoid constitutional questions about searches).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

12. Detective Conaway testified three times: once at a preliminary hearing, once at a suppression hearing and once at trial. Detective Conaway testified at the suppression hearing that he called Angie Conaway (no relation to Detective Conaway) to confirm the description of the silverware set that was stolen from her home. During the preliminary hearing, however, Detective Conaway stated that he had confirmed the identity of the silverware cases by driving to Mrs. Conaway's home after the property was seized. At trial, Mrs. Conaway [sic] testimony contradicted Detective Conaway's version of events, stating that the Detective called to say that he might have discovered her silverware but that the Detective did not ask for a description of the property. Moreover, Mrs. Conaway testified that she drove to the police station to claim her property instead of Detective Conaway bringing it to her as he had testified.

13. It is well-settled Delaware law that credibility disputes about testimony are resolved by the court below as the trier of fact. n7 The trial court's transcribed ruling about the suppression issues makes the following clear. The car searched matched the description related to the police of the burglar's car. The car, later confirmed to be Reeder's, was physically present at Reeder's known work place. Reeder fled the scene with the keys upon hearing the police had arrived. The cassette, CDs and the silver cases were seen in plain view through the car window. Although the "pry tools," flashlights and gloves were as consistent with construction work as with burglary tools, the trial court correctly concluded that the totality of the circumstances justified an immediate warrantless search of the car based upon reason to believe it contained the fruits and tools of a burglary. The police reasonably concluded that it would be impractical to leave the scene to search for Reeder and the keys or to seek a warrant for the car.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 ████████████████████████ , (update choo)

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**14. The trial court was aware of defendant's argument that a police officer manufactured his testimony to meet the test of probable cause and chose nonetheless to believe the officer's testimony. Even if there exists some inconsistency between the officer's testimony at his three court appearances and with that of the owner of the stolen property, the totality of the factual circumstances described at the suppression hearing constituted probable**

cause to search the car without a warrant. The trial court so found, and we
agree. [Emphasis added.]

Reeder v. State, 783 A.2d.

The Supreme Court's decision clearly explains the issues and facts regarding the

suppression motion. Much of defendant's Rule 61 motion focuses on this suppression motion.

His strategy is as follows. He attacks each minute detail of the ruling on the suppression motion

in an effort to obtain a ruling herein which will render that suppression ruling null and void. If

this Court should nullify that ruling, then, according to defendant, the case against him fails

because all of the evidence against him would be suppressed as fruit of the poisonous tree. Thus,

it is necessary to set forth below the Superior Court's ruling on the suppression motion.

> I think I am prepared to rule at this point in time from the bench. I thank
> both sides for a good presentation and the good adversarial process of thrashing
> out the law and the facts.
> I am going to deny the motion. ... I am going to deny the motion to
> suppress, and it is on these grounds:
> When you first read the motion, it really does raise one's interest
> concerning what the officer knew as far as the potential for the immediate
> evidentiary value of these items that he saw. But the testimony -- especially the
> testimony concerning calling the victim and getting a blow-by-blow description of
> what her silver cases looked like, the color and the descriptions -- is substantial.
> I don't mean to be comical, but I don't know what a Lost Boys tape is. I
> presume that is a popular music group. ... [I]t was interesting. You are looking at a
> totality-of-the-circumstances point of view.
> So you have the description of the boxes, which is substantial, I think. You
> have the notation that this is a cassette and he has a C.D. player in there. It could
> have been a gift, or that kid of thing, but that is one more thing that you throw on
> the scales.
> I agree with you as to the pry tools and the fact that they know he is
> working in construction. They came to the construction site and, after the fact, he
> found out that there were no pry marks. But, again, this is an evolving
> investigation that was taken over right after the new year, and this occurs on
> January 13th.
> It is a pattern of burglaries, and the pry bar is a frequent tool used and an
> effective tool in gaining entrance. To that, you add the flashlights and the gloves,

8

which, again, are innocent things, especially for someone working in construction in the winter, until they are added to the other things.

I think that the thing that kind of takes it over the top is that evidence of flight can be used in a criminal trial. A jury can hear evidence of flight to determine what value they think it merits.

Surely, at this point in time, these officers, from an investigator's point of view, feel that they have hit the mother lode. They saw it. They solved a ton of burglaries. And when this fellow runs on them and bolts on them, that is just the icing on the cake, as far as the evidentiary value of what they knew before they went in.

As far as their plain-view observations, I think, combined with all of the other information and the descriptions from the lady -- it is not like this is a greenish-brown substance that they immediately think is marijuana -- that they have a substantial belief, a reasonable belief, that those two cases are, in fact, the cases that were stolen. Certainly, they were stolen at the same time. They are located together and they match the same description.

As to the issue of whether they had to go get a warrant at that time, I don't think there is a separate exigent circumstance. The person had fled. They didn't have the keys to the vehicle; he had the keys to the vehicle. You have a major construction site at Sea Colony with buildings. They go looking for him. They can potentially lose the evidence. I don't think they have to post a guard in this circumstance.

Once they have that exigent circumstance of a motor vehicle, his rights and any person's rights of expectation of privacy are less. ...

In considering the totality of the circumstances, I find that the officers had probable cause. But, again, I commend both of you for your work.

Transcript of August 18, 1999, Ruling on Suppression Motion.

The facts surrounding defendant's boots also are pertinent to this Rule 61 motion.

The police located a pair of Timberland boots in defendant's room while performing a

search. They compared these boots to boot prints at one of the crime scenes. The boots appeared

to match the prints. The boots and boot prints were introduced into evidence at the trial. These

boots remain in the Court's evidence closet. This Court examined the boots as a part of its

consideration of the Rule 61 motion. **The boots are Timberland boots, and they are a size 10.**

9

There was an overwhelming amount of evidence establishing defendant committed the burglaries. Trial counsel's strategy was to admit that defendant possessed some of the stolen property but to contend the State could not establish he committed the burglaries. Trial counsel argued that once Detective Conaway found some of the stolen property in defendant's room, he decided defendant was guilty of the burglaries and developed his case to fit that theory. Trial counsel pointed out inconsistencies in the police and other witnesses' testimony and pointed out where the police emphasized the items which fit the theory that defendant committed the burglaries but disregarded those items which did not fit this theory.

A) Meritless premises

A number of defendant's arguments are based on factual and/or legal premises which are completely meritless. Below, I examine how they are meritless and eliminate them for that reason. No point exists to procedurally analyze and outline all of defendant's many arguments based on them when the basic premises are devoid of any merit at all.

1) Allegedly "perjured" testimony

Defendant repeatedly argues Detective Conaway perjured himself, and bases numerous grounds for relief on the alleged perjury.

a) Silverware cases

Defendant alleges Detective Conaway perjured himself when he testified regarding what information he had with regard to the two cases of silverware he saw in defendant's vehicle before he seized and searched it.

Inconsistencies existed in the detective's testimony on this subject. His testimony also differed from the victim Angie Conaway's testimony. However, there is nothing establishing

10

that Detective Conaway perjured himself and there is nothing requiring a finding that Mrs.

Conaway's version was the correct version. Because defendant raised this issue on appeal, the

Supreme Court was aware of these inconsistencies and did not deem them to be perjury and/or to

constitute error requiring a reversal. All arguments stemming from this mislabeled premise fail.

b) Color of Mustang

Defendant alleges perjury with regard to Detective Conaway's testimony regarding the

color of the Mustang which a witness described.

The witness who saw a Mustang at the site of a burglary testified that he described the car

as dark, either black, blue or green. Transcript from Trial Proceedings occurring on September

15, 1999, at C-39; C-42-3; C-48. Detective Conaway testified that the witness had said the

Mustang was dark, most probably black, but possibly dark blue. Transcript from February 4,

1999, Preliminary Hearing at 7-8; 58; Transcript from Suppression Hearing on August 18, 1999,

at 27; 28; Transcript from Trial Proceedings on September 20, 1999, at 154. The police began

looking for and stopping Mustangs fitting the description. The police did not look for dark green

Mustangs. Transcript from Suppression Hearing on August 18, 1999, at 52.

There is nothing which remotely suggests, let alone establishes, that the detective perjured

himself regarding the color of the Mustang. This is a frivolous argument and all arguments based

on it fail.

2) Arguments related to boots

Defendant makes numerous arguments regarding the boots and the boot prints.

Two arguments pertain to inconsistent testimony by Detective Conaway regarding the

comparison of the boots to boot prints located at the scene of one of the burglaries and to testing

11

done (or not done) on the boots.

At defendant's preliminary hearing, Detective Conaway testified as follows regarding the

boots and prints.

Q. And you didn't testify regarding recovering any fingerprints or other physical evidence linking Mr. Reeder to any of these crime scenes...?

A. Other than the Timberland boots and the matching prints, and the matching size, which we currently have being sent to State Bureau of Identification, we haven't got results back on that. But we have photographs and feet prints.

And we actually took the boot out to the scene, because it was in a field undisturbed, and matched, sat it right there beside it, along with the photograph, which was the same size, size ten, made a tread right beside it, identical tread. And we took that boot, along with the photograph of that print and sent it to Ron Hagman, State Bureau of Identification.

-Q. And that's being processed now?

A. That's correct.

Transcript of February 4, 1999, Preliminary Hearing at 53-55.

At the trial, the boots and the pictures of the boot prints were entered into evidence. The

pertinent testimony and evidence at trial pertaining to the boots and the photographs of the boot

prints are located at Transcript from Trial Proceedings on September 15, 1999, at C-158 -162; C-

173 - 181 ; C-195 - 202; C-203 - 08. The transcript reflects the following information. The police

seized boots from defendant's bedroom. The boots were entered into evidence at defendant's

trial. The police did not take these boots back to the scene and compare them to the actual prints.

However, they did compare these boots to the photographs of the prints made and they were a

match. The police did not test what was on the bottom of the boots; i.e., to determine if it was

mud or dog excrement.                    About Jury

I reach two conclusions regarding the boots. First, testing what was on the bottom of the

12

boots would have been irrelevant since the boots were found a number of days after the

commission of the burglary where the prints were found. Second, the inconsistencies in the

detective's testimony are irrelevant. What mattered was the prints, which the jury saw by

photograph, matched the boots. That was the evidence before the jury. Whether the boots were

taken to the scene was irrelevant.

Because these contentions are without merit, all arguments based on them fail.

All of defendant's remaining "boot" arguments are premised upon his contention that the

boots seized and placed into evidence were not a size 10 boot. That premise is incorrect because

the boots placed into evidence are a size 10 boot. Because that premise is incorrect, all of his

arguments flowing therefrom are frivolous and meritless. These arguments fail.

3) Arguments regarding 11 Del. C. § 3507

Defendant argues that when Detective Conaway testified at the suppression hearing that a

worker on the site approached the police and indicated that Reeder "took off, dropping

everything" after seeing the police and the State failed to produce this witness, a violation of 11

Del. C. § 3507[4] occurred.

---

[4]In 11 Del. C. § 3507, it is provided:

    (a) In a criminal prosecution, the voluntary out-of-court prior statement of
a witness who is present and subject to cross-examination may be used as
affirmative evidence with substantive independent testimonial value.
    (b) The rule in subsection (a) of this section shall apply regardless of
whether the witness' in-court testimony is consistent with the prior statement or
not. The rule shall likewise apply with or without a showing of surprise by the
introducing party.
    (c) This section shall not be construed to affect the rules concerning the
admission of statements of defendants or of those who are codefendants in the
same trial. This section shall also not apply to the statements of those whom to
cross-examine would be to subject to possible self-incrimination.

13

Defendant's argument employs the wrong law. The law he cites, 11 Del. C. § 3507, is inapplicable. What he should be arguing is that the Court should have excluded testimony of the worker's statement because that statement is hearsay. Delaware Rules of Evidence ("DRE"), Rules 801(c)[5] and 802.[6] However, hearsay is permissible to establish probable cause for a search. State v. Stucker, Del. Super., 1156 Criminal Action, 1969, Bifferato, J. (Sept. 22, 1970). See Hicks v. State, 416 A.2d 189, 202 (Del. 1980).

Thus, all of defendant's arguments based upon his contention that this statement was not legally admitted fail. *Cf. never addressed P.M.*

All of defendant's arguments in claims one and three and portions of his ineffective assistance of counsel claims fail because they are based on meritless factual and/or legal premises. The only remaining claims are those asserting ineffective assistance of counsel which are based on premises other than those examined above.

B) Remaining ineffective assistance of counsel claims

To establish a claim of ineffective assistance of counsel, defendant must show that trial counsel's representation fell below an objective standard of reasonableness and but for the attorney's unprofessional errors, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. 668 (1984). With regard to the actual prejudice aspect, "[d]efendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result

---

[5]DRE, Rule 801(c) provides: "Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted."

[6]DRE, Rule 802 provides: "Hearsay is not admissible except as provided by law or by these Rules."

14

of the proceeding would have been different. A reasonable probability is a probability sufficient

to undermine confidence in the outcome." ~~Strickland v. Washington~~, 466 U.S. at 694.

    1) Defendant argues trial counsel was ineffective for not interviewing the worker who

said defendant had run away and calling that worker to the witness stand.

    First, defendant cannot establish trial counsel was ineffective in not interviewing the

worker. The construction site was chaotic and the police officer did not obtain the name of this

witness. Defendant cannot show trial counsel could have located him. Second, defendant cannot

establish that the outcome of the trial would have been other than what it was. Defendant cannot

show that the worker, if located and called to the stand during the suppression hearing, would

have testified that he said other than what the police officer said he stated. Based upon

subsequent events, i.e., defendant fled in another car which he abandoned and stayed on the run

for a while, it is more probable than not that the worker's testimony would have confirmed the

detective's testimony at the suppression hearing. This ground fails.

    2) Defendant argues trial counsel was ineffective in not raising, to the trial court, the

argument that Detective Conaway's testimony regarding his conversations, and the timing

thereof, with Mrs. Conaway constituted perjury. He also argues trial counsel was ineffective for

failing to raise this issue on appeal.

    First, defendant labels the ~~testimony as perjurious.~~ The trial court and the

Supreme Court were aware of the inconsistencies. They did not find evidence of perjury. I reject

that label within the context of this Rule 61 motion.

    I deny defendant's argument that trial counsel was ineffective for failing to seek

reargument on the motion to suppress based on the inconsistencies in Detective Conaway's

15

testimony regarding this conversation, and the timing thereof, with Mrs. Conaway. At that point in the trial, the "ship had sailed" with regard to the probable cause issue. Trial counsel's strategy was to focus on the guilt phase and establish that although defendant had possession of the property, he had not burglarized the residences. That was an appropriate tactic. This Court would have denied any effort to revisit the suppression matter based upon the inconsistencies in the testimony. Thus, defendant cannot show that the outcome of the trial would have been different if trial counsel had moved for a reconsideration of the suppression motion at the end of the trial.

Finally, trial counsel did raise the issue of Detective Conaway's inconsistencies on appeal.

Thus, these arguments fail.

3) Defendant argues trial counsel was ineffective for failing to call Mrs. Conaway at the suppression hearing. However, defendant employs "Monday-morning quarterbacking" with regard to her testimony. Trial counsel had no idea that her testimony might differ from Detective Conaway's. Had he called her to testify at the suppression hearing, trial counsel ran the risk of her confirming the Detective's testimony and thereby, eliminating defendant's chances at a denial of the suppression motion. Without calling her, trial counsel was able to argue the detective was creating probable cause to justify a warrantless search. The Court does not use hindsight in determining if trial counsel was ineffective. Strickland v. Washington, supra. Even if the Court considered trial counsel ineffective for not calling Mrs. Conaway, defendant cannot establish the outcome of the suppression hearing would have been other than what it was. The Court considered several factors in concluding the officers had probable cause to seize and search the car. The information on the silverware cases was just one of numerous factors. Defendant cannot

16

establish the outcome of the suppression motion would have been other than what it was. This
claim fails.

4) Defendant argues trial counsel was ineffective for failing to conduct an investigation
into Detective Conaway's disciplinary record. However, he does not detail what such an
investigation would have revealed nor how the outcome of the trial would have been other than
what it was. This claim fails.

5) Defendant argues that trial counsel was ineffective for failing to prepare for the
suppression hearing. The transcript of the suppression hearing and rulings thereon clarify that
trial counsel was prepared for the hearing, and, contrary to the defendant's contention, was aware
of the law involved. In fact, the trial court twice commented upon how well of a job defense
counsel performed in connection with the motion to suppress. Defendant has not established trial
counsel was ineffective in pursuing the motion to suppress. Thus, this claim fails.

6) Defendant argues trial counsel was ineffective on appeal, also. On appeal, trial counsel
raised the following three issues he considered to be meritorious:

a) Insufficient probable cause to justify a warrantless search of defendant's vehicle;

b) Lack of exigent circumstances to justify a search of defendant's vehicle; and

c) The original sentence imposed was proper and the Court erred in modifying it.

Defendant has not set forth a single issue otherwise which might have been meritorious and
which would have resulted in a different outcome. This claim fails.

7) Defendant argues trial counsel was ineffective for failing to file a reply brief on appeal.
Defendant does not, however, set forth any argument(s) the reply brief would have contained
which would have made a difference in the outcome of the appeal. This claim fails.

17

8) Defendant argues trial counsel was ineffective for failing to seek a sentence

modification. This claim fails because a sentence modification has nothing to do with the

proceedings leading to his conviction, which is to what a Rule 61 motion is limited.

For all of the foregoing reasons, defendant's motion for postconviction relief fails.

## Rule 35(a) motion

Defendant argues that the Court abused its discretion in sentencing defendant, and bases

that contention on the decision in Crosby v. State, 824 A.2d 894 (Del. 2003) ("Crosby"). This

actually is a motion to correct an illegal sentence pursuant to Rule 35(a), not a Rule 61 motion.

However, the Court will address it anyway.

The Supreme Court's decision on the appeal lays out the factual scenario involving

defendant's sentence.

> 15. Following Reeder's conviction, the court initially imposed a mandatory
> 32-year sentence at Level V after concluding that Reeder merited habitual
> offender status on four counts. The State filed a Motion for Correction of
> Sentence and, after a hearing, declared Reeder a habitual offender on all 14 counts
> and increased his sentence to 112 years.

> 16. Reeder argues that the Superior Court erred when it granted the State's Motion
> for Correction of Sentence and then enhanced its initial sentence. The court
> initially sentenced Reeder as a habitual offender on only four of the fourteen
> burglary counts. The State's motion alleged that the Superior Court misapplied 11
> Del. C. § 4214, which defines punishment for habitual offenders when it did not
> sentence Reeder as an habitual offender on each count. n8

> - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

> n 8 Del. C. § 4214 states in pertinent part: (a) Any person who has been 3 times convicted of a
> felony... and who shall thereafter be convicted of a subsequent felony of this State is declared to
> be an habitual criminal, and the court in which such 4th or subsequent conviction is had, in
> imposing sentence, may in its discretion, impose a sentence of up to life imprisonment upon the
> person so convicted. Notwithstanding any provision of this title to the contrary, any person
> sentenced pursuant to this section shall receive a minimum sentence which shall not be less than

the statutory maximum penalty provided elsewhere in this title for the 4th or subsequent felony
which forms the basis of the State's petition to have the person declared to be an habitual criminal
except that this minimum provision shall apply only when the 4th or subsequent felony is a Title
11 violent felony, as defined in § 4201(c) of this title...

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

17. Reeder argues that § 4214 permits a court to use its discretion in determining
if a defendant is a habitual offender. Reeder notes that the statute's language uses
the word "or" in the phrase "fourth or subsequent conviction," and argues that this
indicates that the section is discretionary, otherwise the word "and" would be used
in order to make the section mandatory. This statutory language Reeder argues,
implies that the sentencing court, following a third felony conviction, has
discretion to declare a defendant an habitual criminal on one or all convictions.
Reeder argues that since declaring habitual offender status is discretionary, the
Superior Court erred when it granted the State's motion for correction of sentence
and sentenced him as an habitual offender on all 14 counts as if it were
mandatory.

18. We disagree that habitual offender status is discretionary under § 4214. Each
separate burglary conviction requires a separate sentence. Because of this, the
State has the discretion to seek habitual offender status for each count or none.
Delaware law clearly indicates that "where the State initiates the habitual offender
process, the court is limited to granting only the result sought by the State." n9 We
conclude that the phrase "fourth or subsequent conviction" merely recognizes the
possibility that defendants may have more than three prior felony convictions and
that the use of the word "or" does not imply that the courts have discretion in
determining habitual offender status. Simply put, the General Assembly, in
enacting § 4214, limited the Superior Court's sentencing discretion once the State
properly initiates the habitual offender status process. Therefore, the Superior
Court did not err when it corrected Reeder's sentence and resentenced him as an
habitual offender on each burglary count.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 ████████████ 1998 Del. LEXIS 147, Del. Supr., No. 344, 1997, Walsh, J. (Apr. 13, 1998)
(ORDER).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Reeder v. State, 783 A.2d.

Crosby requires the Court to consider whether the sentence imposed on a conviction is

greatly disproportionate to the conduct being punished. The Court does not look at the total

19

sentence, which was lengthy due to the multitude of convictions. Instead, it looks at the sentence imposed on each burglary conviction, which was the minimum sentence possible. The sentence on each conviction was not greatly disproportionate to the conduct being punished. Defendant's motion for correction of an illegal sentence is denied.

For the forgoing reasons, I deny defendant's motion for postconviction relief and motion for correction of illegal sentence.

IT IS SO ORDERED.

Very truly yours,

Richard F. Stokes

cc: Prothonotary's Office
    Paula Ryan, Esquire
    Ronald D. Phillips, Jr., Esquire

20